UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS AUSTIN HILL,<br><br>                  Petitioner,<br><br>       v.<br><br>B. M. TRATE,<br><br>                  Respondent. | Case No.: 1:22-cv-01433-KJM-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS<br><br>(Doc. 22)<br><br>**14-DAY DEADLINE** |

Petitioner Thomas Austin Hill is proceeding pro se and *in forma pauperis* in this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. Petitioner filed his petition for writ of habeas corpus on October 24, 2022. (Doc. 1). On May 7, 2024, the Court ordered Respondent to file a response to the petition. (Doc. 14). On September 12, 2024, after two extensions of time, Respondent filed a motion to dismiss the petition. (Doc. 22). On February 28, 2025, after three extensions of time, Petitioner filed his opposition to the motion. (Doc. 32).[1]

**I.      Background**

According to records from the Georgia Department of Corrections attached to Respondent's motion (Doc. 22-1), following a jury trial, Petitioner was convicted of felony robbery by intimidation and misdemeanor simple assault in Georgia state court. (Doc. 22-1 at 3-4 ¶ 10; *id.* at

---

[1] The matter was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(17).

24).[2] On February 12, 2004, Petitioner was sentenced (less custodial time suspended) to concurrent terms of 11 years for the felony conviction and 12 months for the misdemeanor conviction. His sentence start date was set as the date of his arrest (April 19, 2002).

On September 16, 2002, while Petitioner was in custody of Georgia state authorities, he was temporarily removed by the United States Marshals Service via a Writ of Habeas Corpus Ad Prosequendum ("WHCAP") to appear for arraignment on indictment in the Eastern District of Virginia. (*Id.* at 3 ¶ 7; *id.* at 12; *id.* at 67-68 dkt. entry 4). On February 28, 2003, he appeared in district court and was sentenced to a total term of 32 years on two counts of use and brandishing of a firearm during and in relation to a crime of violence. (*Id.* at 70, dkt. entry 40). On March 19, 2003, he was returned to Georgia state authorities. (*Id.* at 3 ¶ 9; at 12).

On June 27, 2011, Petitioner completed his Georgia state sentence and was released to Maryland state authorities in regard to a 2002 warrant for his arrest in that state. (*Id.* at 3-4 ¶ 10). Petitioner was briefly held at Emanuel County Jail in Georgia for 15 days, from June 27, 2011, to July 12, 2011. (*Id.* at 13). Ultimately, on May 3, 2012, Petitioner was convicted of robbery with a deadly weapon in Maryland state court. He received credit to his sentence starting from June 24, 2002. (*Id.* at 3-4 ¶ 10-11; *id.* at 31, 35). On August 27, 2014, he was paroled from his incarceration in Maryland. (*Id.* at 4 ¶ 12; *id.* at 32, 35).

On October 6, 2016, Petitioner was arrested by Virginia state authorities for robbery, burglary, wearing a mask to conceal identity, concealed weapon, and assault. (*Id.* at 4 ¶ 13; *id.* at 37, 40). On February 24, 2017, the day of his preliminary hearing on those charges, all Virginia state counts were disposed of "*nolle prosequi*." (*Id.* at 4 ¶ 14; *id.* at 39-41). On February 27, 2017, Petitioner was released to federal custody to serve his 32-year sentence imposed in the Eastern District of Virginia. (*Id.* at 4 ¶ 15; *id.* at 46). He was held at Western Tidewater Regional Jail in Virginia from February 27, 2017, to March 9, 2017, followed by Northern Neck Regional Jail, also in Virginia, from March 9, 2017, to March 15, 2017. (*Id.* at 13). Petitioner also was given credit to his federal sentence for his time in Virginia state custody, namely the period from October 6, 2016, to February 26, 2017. (*Id.* at 4-5 ¶ 18; *id.* at 49).

---

[2] References to Respondent's Appendix (Doc. 22-1) are to the CM/ECF-assigned pages.

## II. Governing Law and Analysis

"As a general rule, [28 U.S.C.] § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of detention." *Harrison v. Ollison*, 519 F.3d 952, 955 (9th Cir. 2008) (quotations and citations omitted). Thus, a federal prisoner who wishes to challenge the validity or constitutionality of his federal conviction or sentence must do so by moving the court that imposed the sentence to vacate, set aside, or correct the sentence under § 2255. *Alaimalo v. United States*, 645 F.3d 1042, 1046 (9th Cir. 2011).

In contrast to challenges to the legality of a conviction and sentence, a petition by a federal prisoner challenging the manner, location, or conditions of a sentence's execution is brought under 28 U.S.C. § 2241 in the district of confinement. *See Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). The BOP's calculation of sentencing credit is an issue pertaining to the execution of a sentence which a habeas petitioner may challenge through such a petition. *See Zavala v. Ives*, 785 F.3d 367, 370 n.3 (9th Cir. 2015).

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4.[3] The Advisory Committee Notes to Habeas Rule 4 provide that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Habeas Rule 4. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). A district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019) (quoting Rule 4).

In ruling on a motion to dismiss, the court "accept[s] the factual allegations in the [petition] as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and quotation omitted). Any exhibits attached to the petition are "part of the pleading for all purposes." *Hartmann v. Cal. Dept. of Corr. and Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (quoting Fed. R. Civ. P. 10(c)).

---

[3] The Rules Governing § 2254 cases in the United States Courts ("Habeas Rules") are appropriately applied to proceedings undertaken pursuant to 28 U.S.C. § 2241. Habeas Rule 1(b).

**A. Sentence Computation - Governing Law**

Pursuant to 18 U.S.C. § 3585, the BOP is tasked with computing federal sentences. *United States v. Wilson*, 503 U.S. 329, 333 (1992). The BOP is responsible for determining the commencement date of the sentence, whether any credit should be awarded for time spent in custody before the sentence commenced, and whether credit for "good time" is warranted. *United States v. Peters*, 470 F.3d 907, 909 (9th Cir. 2006) (per curiam); *Tompkins v. Graber*, No. CV14-0222 PHX DGC, 2015 WL 1536289, at *5 (D. Ariz. Apr. 6, 2015) (citing 18 U.S.C. § 3585(a) and (b)).

"'[A] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.'" *Schleining v. Thomas*, 642 F.3d 1242, 1243–44 (9th Cir. 2011) (quoting 18 U.S.C. § 3585(a)). Thus, "a federal sentence cannot begin *before* the defendant has been sentenced in federal court." *Id.* (adopting reasoning of *United States v. Gonzalez,* 192 F.3d 350, 355 (2d Cir. 1999), and *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980)).

A federal prisoner is entitled to "credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences … that has not been credited against another sentence." 18 U.S.C. § 3585(b)(2). )).

**B. Sentence Computation - Analysis**

Because Petitioner challenges the BOP's computation of his sentence that he alleges unlawfully effects the length of his sentence, the petition is properly brought pursuant to 28 U.S.C. § 2241. *Zavala*, 785 F.3d at 370 n.3.

Petitioner disputes his initial date of arrest by the state of Georgia. In his opposition, he claims he was arrested at the scene of the crime, namely March 26, 2002, and the date of April 19, 2002, is when he was transferred to Fulton County by the City of Atlanta. (Doc. 32 at 4-5). However, the record evidence attached to Respondent's motion reflects an arrest date of April 19, 2002. (Doc. 22-1 at 8 ["Booked" 4/19/2002]; *id.* at 24 ["Sentence Start Date" 4/19/2002]). Respondent provides that custody from March 27, 2002, to April 18, 2002, "could not be verified

4

1  and therefore, it has not been applied to Petitioner's federal sentence." (*Id.* at 4-5 ¶ 18). Petitioner
2  offers no evidence to support custody beginning on March 26 or 27, 2002, and Respondent's motion
3  attaches exhibits that refute such a claim.

4  Petitioner further asserts that the Respondent's own records show his Georgia state sentence
5  did not begin until March 9, 2004. (Doc. 32 at 6). Petitioner is incorrect. The records show that
6  Petitioner's *incarceration* after his conviction began on March 9, 2004 (*see* Doc. 22-1 at 26); in
7  contrast, his *sentence* was deemed to begin retroactively upon the date of his arrest, namely April
8  19, 2002 (*see id.* at 24). Petitioner was given credit to his Georgia state sentence from April 19,
9  2002, to June 27, 2011, and such credit, thus, may not be applied to his federal sentence.

10  Upon completion of his Georgia state sentence on June 27, 2011 (*see id.* at 26), he was
11  released to Maryland state authorities. He was given credit to his Maryland state sentence for the
12  period of June 24, 2002, to August 27, 2014, and such credit, thus, may not be applied to his federal
13  sentence. (*Id.* at 3-4 ¶ 10-11; *id.* at 31, 35). Petitioner states that, upon release from Georgia state
14  custody, he "should have been transported to my federal prison of designation," namely United
15  States Penitentiary, Hazelton ("USP Hazelton"). (Doc. 32 at 2). Petitioner states that he is not
16  seeking credit for time where he was in custody of the state of Georgia but, rather, "for which [he]
17  was at liberty by no fault of [his] own." (*Id.* at 3). He states that credit should start on the day he
18  was released from Georgia state custody, namely, February 27, 2011 (*id.* at 3), though earlier in his
19  opposition he references the date provided in the records attached to Respondent's motion, namely,
20  June 27, 2011 (*id.* at 2).

21  Petitioner asserts that the United States Marshal Service ("USMS") was negligent in their
22  handling and turned him over to Emanuel County Jail. (Doc. 32 at 4). USMS records evidence
23  Petitioner being held at said jail for 15 days, from June 27, 2011, to July 12, 2011. (Doc. 22-1 at
24  13). Petitioner was given credit for this time by Maryland state authorities (*id.* at 3-4 ¶ 10-11; at
25  31, 35) and, thus, such time may not be credited against his federal sentence.

26  Thereafter, Petitioner was paroled. (*Id.* at 4 ¶ 12; at 32, 35). On October 6, 2016, Petitioner
27  was arrested by Virginia state authorities. (*Id.* at 4 ¶ 13; at 37, 40). On February 24, 2017, the day
28  of the preliminary hearing, all Virginia state counts were disposed of *nolle prosequi*. (*Id.* at 4 ¶ 14;

5

at 37, 40-41). On February 27, 2017, he was released to exclusive federal custody. (*Id.* at 4 ¶ 15; at 46). Petitioner was given credit to his federal sentence for his time in Virginia state custody, namely the period from October 6, 2016, to February 26, 2017. (*Id.* at 4-5 ¶ 18; at 49).

Petitioner asserts that, as USMS should have transported him to USP Hazelton on release from Georgia state custody on June 27, 2011, his federal time credit should have begun on that date. (Doc. 32 at 9-11). He further asserts that he was erroneously released by the state of Maryland, due to no fault of his own, as the USMS failed to lodge a detainer or hold on him. (*Id.* at 11).

As to both claims, Petitioner is incorrect. "As a general rule, the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing, and incarceration." *Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir. 1991). The first sovereign here was the state of Georgia. Upon being provided to federal authorities pursuant to the WHCAP, Petitioner was "on loan," such that Georgia's jurisdiction over him continued without interruption. *See United States v. Brown*, 875 F.3d 1235, 1239 (9th Cir. 2017). After completion of his Georgia state sentence, Georgia's priority terminated and Petitioner was provided to federal authorities. *See Johnson v. Gill*, 883 F.3d 756, 765 (9th Cir. 2018).

As the Ninth Circuit has explained, "a sovereign, which has the paramount right to proceed with trial and sentence and which at the same time has custody of a defendant, may yield up the body to another sovereign and consent to trial of the defendant upon a subsequent charge by the latter and, of course, upon a prior charge." *Strand v. Schmittroth*, 251 F.2d 590, 595 (9th Cir. 1957). "A sovereign's priority terminates when the sentence expires, charges are dismissed, or the prisoner is allowed to go free." *Johnson*, 883 F.3d at 765. Put another way, federal authorities permissibly relinquished sovereignty and provided Petitioner to the state of Maryland for trial and sentencing there pursuant to a warrant from 2002. Additionally, "[w]hen a defendant or a parolee or a probationer is released from actual physical custody, even for temporary purposes, he may be arrested, tried and convicted by any other such sovereign in the territory in which he may be without the consent of the first sovereign, which may have a judgment against him as yet unsatisfied or which may be seeking to try him." (*Id.* at 599). As such, it was permissible for the state of Virginia

1  to arrest Petitioner and begin proceedings against him, while the judgment in federal court was as
2  yet unsatisfied and Petitioner was a parolee.  Accordingly, Petitioner's claims regarding negligent
3  handling by USMS concerning failure to transport him to USP Hazelton as well as erroneous
4  release by the state of Maryland due to USMS' failure to lodge a detainer are without merit.

5  Turning to the issue of time credits, Petitioner is entitled only to "credit toward the service
6  of a term of imprisonment for any time he has spent in official detention prior to the date the
7  sentence commences … *that has not been credited against another sentence*."  18 U.S.C. §
8  3585(b)(2) (emphasis added).  As provided above, all time Petitioner spent in official detention
9  prior to beginning his federal sentence was credited to state sentences and, thus, cannot be credited
10 to his federal sentence.  Petitioner was released on parole in Maryland and it follows that such time
11 was credited to his Maryland state sentence.  *See Louisville v. Gibbs*, No. CV 10-03070 AG (AN),
12 2010 WL 11474995, at *3 (C.D. Cal. Aug. 30, 2010), *report and recommendation adopted*, No.
13 CV 10-03070 AG (AN), 2010 WL 11475493 (C.D. Cal. Nov. 1, 2010), *aff'd*, 515 F. App'x 707
14 (9th Cir. 2013) (finding petitioner could not receive federal prior custody credit for his time served
15 in state custody, including time on parole).  The singular exception is the time Petitioner spent in
16 Virginia state custody, which was already credited to his federal sentence.

17 Therefore, the undersigned, upon review of the record, finds Petitioner has properly
18 received all applicable time credits to his federal sentence.  Though this by itself would result in
19 the undersigned recommending Respondent's motion to dismiss to be granted, the undersigned will
20 separately address the issue of exhaustion raised in the motion.

21 **C. Exhaustion**

22 Before filing a petition for writ of habeas corpus, a federal prisoner challenging any
23 circumstance of imprisonment must first exhaust all administrative remedies.  *Martinez v. Roberts*,
24 804 F.2d 570, 571 (9th Cir. 1986) (per curiam).  The requirement that federal prisoners exhaust
25 administrative remedies before filing a habeas corpus petition was judicially created; it is not a
26 statutory requirement.  *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because
27 exhaustion is not required by statute, it is not jurisdictional." (*Id.*).  If Petitioner has not properly
28 exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustions

1  and reach the merits or require the petitioner to exhaust his administrative remedies before
2  proceeding in court." (*Id.*).

3  The first step in exhausting administrative remedies is a request for informal resolution. 28
4  C.F.R. § 542.13. When informal resolution procedures are inadequate, the BOP makes available
5  to inmates a formal three-level administrative remedy process: (1) a Request for Administrative
6  Remedy ("BP-9") filed at the institution where the inmate is incarcerated; (2) a Regional
7  Administrative Remedy Appeal ("BP-10") filed at the Regional Office for the geographic region
8  in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal
9  ("BP-11") filed with the Office of General Counsel. 28 C.F.R. § 542.10 *et. seq.*

10  Respondent asserts that Petitioner submitted a BP-9 form but failed to submit a BP-10 and
11  BP-11 appeal. (Doc. 22 at 5-6). In his opposition, Petitioner does not refute this. He provides that
12  he did file a BP-9 and "the warden rejected it himself." He states that it "would have been futile to
13  file a BP-10 to the regional office" because the regional office does not have "domain over [him],"
14  and that "when the warden rejected [his] BP-9 that in its self [sic] was the point of exhaustion."
15  (Doc. 32 at 14). Petitioner asserts that Respondent falsely characterized the administrative remedy
16  process and that it begins, in fact, with the a BP-8 at the institutional level and that "it would have
17  made no [sense] to file below the warden because case managers [do not] have domain over [him]
18  nor [does] the regional office." (*Id.* at 15).

19  Petitioner attaches a number of grievance forms and rejections to his petition. *See* (Doc. 1).
20  Petitioner's BP-9 form was rejected on October 26, 2021, for failure to attempt informal resolution
21  prior to its submission. (*Id.* at 15). His appeal of the rejection was deemed untimely. (*Id.* at 19).
22  Petitioner then filed an appeal to the Western Regional Office with an attached memorandum from
23  "K. Officer, Counselor," on BOP letterhead explaining the untimeliness was not the fault of
24  Petitioner. (*Id.* at 20). The Western Regional Office rejected the appeal, directing Petitioner to re-
25  submit his BP-9 to the warden. (*Id.* at 22). Petitioner then filed an appeal with the Central Office,
26  which was rejected. The Central Office concurred with the prior rejection from the Western
27  Regional Office and directed Petitioner to file his appeal at the institutional level. (*Id.* at 24).

28  It follows that Petitioner failed to properly exhaust his administrative remedies. His appeals

did not reach the merits of his grievance but, rather, were rejected based on his failure to properly re-file his original BP-9.

As Petitioner has already received all applicable time credit and, separately, failed to exhaust his administrative remedies, the undersigned will recommend that Respondent's motion to dismiss be granted and the petition be dismissed with prejudice.

**Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (Doc. 22) be GRANTED and this action be dismissed with prejudice;

2. The Clerk of the Court be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. **Any pages filed in excess of the 15-page limitation may be disregarded** by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **June 11, 2025**

UNITED STATES MAGISTRATE JUDGE